UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRADLEY PELHAM,

     Plaintiff,

v.                                  Case No. 5:19-CV-58-HTC

ANDREW SAUL, Acting
Commissioner of Social Security,

     Defendant.

_____/

<u>MEMORANDUM ORDER</u>

This case is before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Bradley Pelham's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34. The parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before the Court, the Court concludes the Administrative Law Judge's ("ALJ") denial of DIB is supported by substantial evidence. The Commissioner's decision, therefore, will be AFFIRMED.

## I.    ISSUES ON REVIEW

    1.    Whether the ALJ erred in her treatment of medical source opinions.

2.      Whether Plaintiff meets Listing 12.02.

3.      Whether the ALJ's RFC determination is supported by substantial evidence.

4.      Whether the ALJ's credibility determinations of Plaintiff's subjective allegations of his symptoms is supported by substantial evidence.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Medical History

Claimant is a 48-year-old male who was previously employed as a pilot escort from 2002 to 2004, and again from 2007 to 2009, and as a merchandiser assembling displays for retailers from 2005 to 2006, and again from 2012 to 2015.  T. 68, 70.[1] He has been married since 1999 and was living with his wife at the time of the hearing.  T. 76.

In August 2015, Claimant began experiencing unexplained dizziness and memory loss.  T. 688.  Later that same month, he was admitted to the Southeast Alabama Medical Center ("SEAMC") for "generalized tonic-clonic seizure" and was discharged with an underlying diagnosis of alcohol withdrawal seizures.  T. 399. A few days after his discharge, he was admitted to SEAMC again for "change in mental status and acute psychosis."  T. 399.  At that time, his urine screen was positive for benzodiazepine as well as THC, and he admitted to smoking significant

_____

[1] References to the record will be by "T.," for transcript, followed by the page number.

amounts daily.  T. 692.  Although an MRI brain scan without contrast and CT scan of the head without contrast were both normal, because Claimant exhibited an altered mental state, he was transferred to the University of Alabama at Birmingham ("UAB"), in October 2015, for a second opinion.  T. 691-92.

According to UAB's records, Claimant has a history of multiple admissions to an outside hospital for "alcohol and alcohol related seizures" as well as encephalopathy[2].  T. 705.  Upon discharge, Claimant's primary diagnosis was paraneoplastic syndrome[3] and drug-induced hyperglycemia.  T. 702.  Claimant received treatments from UAB until January 2016.  His last seizure was in 2015, and his last hospitalization was in 2015.  A more detailed discussion of Claimant's medical history is discussed below as it relates to each of the arguments raised by the Claimant in this appeal.

## B.    Procedural Background

On November 10, 2015, Plaintiff protectively filed an application for DIB, claiming disability beginning August 31, 2015, due to paraneoplastic syndrome, seizures, anxiety, diabetes and memory issues.  T. 130, 256-66.  On March 17, 2016, the Commissioner denied the application initially and, on June 9, 2016, denied it on reconsideration.  T. 146, 164.  A hearing was conducted on February 13, 2018, and

---

[2] "Encephalopathy" means damage or disease that affects the brain.  www.webmd.com.
[3] "Paraneoplastic syndrome" is a group of rare disorders triggered by an abnormal immune system response to a cancerous tumor known as neoplasm.  www.ninds.nih.gov.

on March 28, 2018, the ALJ issued a decision finding the Claimant not disabled under the SSA.  T. 10-25; *see* T. 69-128, hearing transcript.  On December 3, 2018, the Appeals Council denied a request for further review, and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1-4.  The Commissioner's determination is now before the Court for review.

## III.   STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards."  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The SSA defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)(4), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[4]

5.    Even if the claimant's impairments prevent him from performing his past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's residual functional capacity ("RFC") and vocational factors, he is not disabled.

---

[4] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Page 7 of 34

## IV.   FINDINGS OF THE ALJ

In the written decision, the ALJ made the following findings relative to the issues raised in this appeal:

•       The claimant has the following severe impairments:   pemphigus paraneoplastica/paraneoplastic autonomic dysfunction;

•       The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

•       The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c).  The claimant can occasionally climb ramps stairs, ladders, ropes, and scaffolds.  He can occasionally balance.  He can have occasional exposure to workplace hazards such as a driver, exposure to unprotected heights, and exposure to moving mechanical parts.  The claimant can perform simple, routine tasks.  He can have frequent interaction with the public and is limited to few workplace changes;

•       Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

T. 15-17, 23.

## V.     THE ALJ'S ASSIGNMENT OF WEIGHT TO THE MEDICAL OPINIONS

As discussed in detail below, Claimant raises four (4) arguments regarding the weight the ALJ assigned to certain medical opinions.  First, he argues the ALJ erred in failing to reference or discuss Dr. Kesserwani's opinions.  Second, he argues the ALJ erred in failing to incorporate all of Dr. Long's opinions into the hypothetical.  Third, he argues the ALJ erred in assigning only partial weight to the opinions of treating physician, Dr. Cook.   Fourth, he argues the ALJ erred in assigning great weight to the opinions of the state agency physicians.  After careful consideration and an independent review of the record, the Court finds that substantial evidence exists to support the ALJ's assignments of weight.

### A.     Whether The ALJ Erred In Not Assigning Weight To Dr. Kesserwani's Opinions.

Claimant seeks remand because the ALJ overlooked Dr. Kesserwani's opinion in issuing his opinion.  ECF Doc. 22 at 5-7.  Specifically, in the record before the ALJ is a one paragraph letter from Dr. Kesserwani addressed "to whom it may concern," and dated September 6, 2016, in which Dr. Kesserwani writes that Plaintiff suffers from "limbic encephalitis due to voltage-gated potassium channel."  T. 811. Dr. Kesserwani also states that Plaintiff has an "abnormal MRI" and "based upon the persistence of the severe abnormalities on the MRI," the "condition is permanent, and he agrees Plaintiff is 100% permanently disabled." *Id.*  It is wholly unclear from

the letter when Dr. Kesserwani treated Claimant, if at all, or how many times he treated Claimant.

When reviewing medical opinions, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). Indeed, the failure to do so is reversible error. *See Wimberley v. Berryhill,* 2019 WL 1418056, at *6 (S.D. Ala. Mar. 29, 2019), citing *Williams v. Astrue*, 2009 U.S. Dist. LEXIS 12010, at *4, 2009 WL 413541, at *1 (M.D. Fla. Feb. 18, 2009).

The Commissioner does not dispute that Dr. Kesserwani's letter is not specifically referenced in the ALJ's decision. He argues, however, that the ALJ's error, if any, is harmless (1) because Dr. Kesserwani's opinions are similar to that of Dr. Cook's, to which the ALJ assigned partial weight, (2) Dr. Kesserwani's opinion, which included that Plaintiff is 100% permanently disabled does not constitute a "medical opinion"; and (3) there is no evidence that Dr. Kesserwani was a treating physician. Based on a review of the record, the undersigned agrees.

First, the undersigned agrees that Dr. Kesserwani's opinions are not "medical opinions." "Medical opinions are statements from physicians and psychologists or

other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."   20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).   Although Dr. Kesserwani identifies the condition from which Claimant suffers, and generally identifies Claimant's symptoms as anxiety, difficulty thinking and processing information, he does not explain how those symptoms result in any impairments.   Instead, he merely states that he does not believe Claimant will not be able to return to his previous levels "based on the severe abnormalities in the MRI."  T. 811.   Dr. Kesserwani does not identify what the abnormalities are or the date of the MRI on which he relies.  He, also, does not state what he can or cannot do other than not work at his previous levels.

"Because the letter does not provide any insight into the functional limitations created by [Claimant]'s condition," it is not a "medical opinion."  *See Williams v. Comm'r of Soc. Sec. Admin.*, 2015 WL 5708772, at *4 (N.D. Ala. Sept. 18, 2015). In other words, Dr. Kesserwani's "failure to include Claimant's remaining functioning level means that [his] letter[s] do[es] not constitute medical evidence" and "need not be weighted."  *Pena v. Berryhill*, 2017 WL 2984163, at *8 (S.D. Fla. May 8, 2017).   Also, although Dr. Kesserwani opines that Claimant is 100% disabled, whether Claimant is disabled is a legal conclusion reserved for the ALJ,

and the doctor's opinion on that legal issue is not entitled to any deference. *See Kramerman v. Colvin,* 2015 WL 965763, at *8 (S.D. Fla. March 4, 2015); *see id.* at *3 ("As the ALJ properly noted, Dr. Hudgins' opinion that Williams is permanently disabled is an opinion on an issue reserved to the Commissioner, and therefore not entitled to any special significance").

"Doctors' opinions are not medical opinions with controlling weight when they are determinations reserved to the Commissioner, particularly on whether a person is disabled or unable to work." *Smith v. Soc. Sec. Admin, Comm'r.*, 2014 WL 4264841, at * 6 (N.D. Ala. Aug. 27, 2014); *see also, Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 742, n. 5 (doctor's letters, stating in conclusory fashion, that plaintiff was totally disabled and unable to work, "were not medical opinions entitled to any special significance"), citing 20 C.F.R. §§ 404.1527(e), 416.927(e) (explaining that an opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is disabled or unable to work, is not considered a medical opinion and is not given any specific significance, even if offered by a treating source, but will be taken into consideration").

As the court in *Smith* noted, the "Eleventh Circuit has rejected challenges to RFC determinations based solely on a person **having** a particular impairment." *Smith*, 2014 WL 4264841, at *6, quoting, *Moore v. Barnhart,* 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005). "The mere existence of these impairments does not reveal the

extent to which they limit her ability to work or undermine the ALJ's determination." *Id.* Thus, the undersigned agrees with the Commissioner that any error by the ALJ's failure to reference Dr. Kesserwani's opinion was harmless error. *See Williams*, 2015 WL 5708772, at *4 (addressing identical issue of the ALJ's assignment of little weight to one doctor's letter and failure to discuss another and stating that "while not crystal clear, the court is inclined to agree with the commissioner").

The undersigned also agrees with the Commissioner that the ALJ's assignment of partial weight to Dr. Cook's opinion applies equally to Dr. Kesserwani's letter. Indeed, a fair reading of the ALJ's decision combined with the fact that the Claimant submitted Dr. Kesserwani's and Dr. Cook's letters together, shows that the ALJ did consider Dr. Kesserwani's letter; she just mistakenly thought it was part of Dr. Cook's opinion.[5] In the ALJ's discussion of Dr. Cook's opinion, the ALJ notes that Dr. Cook opined that Claimant is permanently and totally disabled. T. 21. The ALJ cites Exhibits 9F and 10F in support. Exhibit 9F consists of a 3-page letter from Dr. Cook. Exhibit 10F is a 4-page fax from Claimant and includes both Dr. Cook's 3-page letter *and* Dr. Kesserwani's one-paragraph letter.

Also, in assigning "partial weight" to Dr. Cook's opinion, the ALJ explains

---

[5] It is easy to see how the ALJ made this mistake as Claimant submitted Dr. Kersserwani's one-paragraph letter with Dr. Cook's letter. Also, both are dated in September 2016. Additionally, although Dr. Kesserwani signed his letter, the paragraph is not on letterhead, is not in letter format, and does not appear to be a stand-alone document.

that although "Dr. Cook opined that the Claimant's impairment was permanent," "it appears the claimant's brain MRI actually improved over time." T. 21. This reference to an MRI supports the conclusion that the ALJ considered Dr. Kesserwani's opinion, because it is only Dr. Kesserwani's letter (and not Dr. Cook's letter) that relies on abnormal MRI results as a basis of his conclusion. Additionally, like Dr. Cook's letter, Dr. Kesserwani's letter states that Claimant is "100% permanently disabled." T. 811. Thus, the ALJ's assignment of partial weight appears to apply equally to Dr. Kesserwani's opinion.

There is no principle of administrative law or common sense that requires remand in quest of a perfect opinion and remand is not essential if it will amount to nothing more than an empty exercise. *Smith,* 2014 WL 4264841, at *7, *quoting Stanton v. Astrue*, 617 F.Supp.2d 1205, 1222 (M.D. Fla. 2008) (citing *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) and *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000)). Here, remanding the case for the ALJ to state the weight he accorded to Dr. Kesserwani's opinion would be an empty exercise. *See Smith*, 2014 WL 4264841 at *7.

Lastly, the undersigned agrees with the Commissioner that Dr. Kesserwani was not a treating physician. Although Claimant states that Dr. Kesserwani is his new neurologist, Claimant did not submit any treating records for Dr. Kesserwani

prior to the hearing date.[6]  *Id.* at 5, n. 3.  As stated above, there is no indication from Dr. Kesserwani's letter how many times, if any, he treated Claimant, before he wrote the letter.  Additionally, after the hearing, Claimant submitted a single treatment note from Dr. Kesserwani, dated April 2018.  Thus, there is no evidence that Dr. Kesserwani was Claimant's treating physician at the time he drafted the letter in September 2016.  Even were the Court to consider the April 2018 treatment note, Dr. Kesserwani's letter would not be entitled to deference because one-time examiners are not considered treating physicians.  *See e.g., McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

### B.   Whether The ALJ Improperly Failed To Include Limitations And Findings From Dr. Long In The Hypothetical Or RFC Assessment.

On February 1, 2016, Dr. Long conducted a consultative psychological examination and memory testing of the Claimant for purposes of state disability benefits.  T. 770-72.  Dr. Long determined the results of the testing were invalid because of the Claimant's increased and observable anxiety level as the testing was being conducted, which included Claimant leaving the testing to vomit.  *Id.*

Claimant returned to Dr. Long on February 29, 2016, for a general clinical evaluation with mental status consultative examination.  T. 774-777.  Although

---

[6] Included in the transcript provided by the Commissioner are treatment notes from Dr. Kesserwani from April 2018, *after* the ALJ's opinion was issued.  The notes were submitted to the Appeals Council, which determined that they were not relevant as they do not relate to the period at issue. T. 2.

Claimant appeared to be confused and disorganized in his thinking, his speech was "logical and reality based". T. 776. He was oriented to person, place, time and situation, and answered 10 out of 10 orientation questions correctly. *Id.* His immediate and delayed recall memories were intact. *Id.* Dr. Long noted that Claimant "seemed capable of making appropriate decisions given relevant information." *Id.* Additionally, Claimant "related that he is generally able to provide for his self-care needs." *Id.*

Dr. Long diagnosed Claimant with unspecified depressive disorder; unspecified anxiety disorder; and ruled out unspecified neurocognitive disorder. *Id.* at 777. Dr. Long also encouraged Plaintiff to resume his current employment (upon physician approval) and opined that, while there were significant psychological barriers to continued employed, those barriers would improve with Plaintiff's improved health and proper and consistent treatment. *Id.* The ALJ assigned great weight to Dr. Long's opinions because it was consistent with the overall record. T. 21.

Claimant argues the ALJ erred in failing to identify which parts of Dr. Long's two examination reports and opinions were being credited. The undersigned finds little merit in this argument. There was no need for the ALJ to reconcile Dr. Long's February 1, 2016 assessment and his February 29, 2016 assessment because Dr. Long specifically stated that the February 1, assessment results "are deemed to be

an incomplete and invalid estimate of [Claimant's] current level of functioning in the areas assessed and are provided for informational purposes only."  T. 771. Indeed, Dr. Long states that he was unable to obtain valid memory scores on February 1. *Id.*

Claimant also argues the ALJ erred by excluding significant portions of the findings from Dr. Long's opinions in the hypothetical question and RFC determination.  Specifically, Claimant contends the ALJ did not account for the "significant memory impairment and anxiety reaction documented by Dr. Long" or the "Plaintiff's confused and disorganized thinking."  ECF Doc. 22 at 9.  The record does not support this argument.

First, although Dr. Long stated that Claimant "appears to be negatively impacted by anxiety, depression and memory problems," Dr. Long did not specifically place any limitations on Claimant arising from those issues.  T. 777. Instead, Dr. Long "encouraged" Claimant to resume his current employment.  *Id.* Additionally, as stated above, Dr. Long's objective testing of Claimant did not show any impairments in his memory, judgment or attention.  T. 776.  Second, the ALJ specifically stated that she was limiting Claimant "to simple routine tasks for his cognition trouble."  T. 22.  She also included in her hypothetical that the individual would be "limited to few workplace changes," which reflects consideration of Claimant's anxiety.  T. 107.

**C.**   **Whether Substantial Evidence Supports The ALJ's Treatment Of Dr. Cook's Opinions**.

As discussed above, the record includes a letter submitted by Dr. Cook, dated September 13, 2016.  T. 805-06, 809-10.  In this letter Dr. Cook noted that Plaintiff had been diagnosed with paraneoplastic syndrome with voltage-gated channel potassium antibody and a seizure disorder, and he had a plasma exchange done.  T. 805, 809.  Dr. Cook stated the Claimant has "memory problems, continuous headaches and chronic encephalopathy."  *Id.*  Dr. Cook concluded that Claimant "is permanently and totally disabled."  *Id.*  Claimant argues the ALJ should have assigned substantial, rather than partial, weight to Dr. Cook's opinions  ECF Doc. 22 at 10.

Based on the medical records it appears that Dr. Cook treated claimant at various times from August 2015 until November 2015.  There are no records from Dr. Cook after November 2015, other than the September 2016 letter, and a treatment note from March 2018, after the hearing before the ALJ.

The ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians in reaching her decision.  In doing so, the ALJ must specify the weight given to different medical opinions and explain her reasoning.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir.

2011).   Although the ALJ must give "substantial weight" to the opinion of a claimant's treating physician, unless "good cause" exists for not doing so, the same deference need not be accorded to the "opinion of a one-time examining physician." *See Costigan v. Comm'r, Soc. Sec. Admin.*, 603 F. App'x 783, 788 (11th Cir. 2015) (per curiam) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) ); *Petty v. Astrue*, 2010 WL 989605, at *14 (N.D. Fla. Feb. 18, 2010) (citing *Crawford*, 363 F.3d at 1160).

Good cause to discredit the testimony of *any* medical source exists when it is contrary to or unsupported by the evidence of record.  *See Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004).  "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence."  *Hogan v. Astrue*, 2012 WL 3155570, at *3 (M.D. Ala. Aug. 3, 2012).  Also, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (citation omitted); *Adamo v. Comm'r of Soc. Sec.*, 365 F. App'x 209, 212 (11th Cir. 2010) (per curiam) ("The ALJ may reject any medical opinion if the evidence supports a contrary finding.").

Although an ALJ's explanation of his decision must sufficiently explain the weight given to obviously probative exhibits, an ALJ need not discuss every piece of evidence, so long as the decision enables the reviewing court to conclude that the

ALJ considered the claimant's medical condition as a whole. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).  In the ALJ's opinion, she explained that she was assigning "partial weight" to Dr. Cook's opinions because since the opinion, "the claimant has returned to driving alone, as much as half an hour each way to Walmart, and has trained a puppy," and while these tasks are not at the level of complex work previously performed by Claimant, they indicate that he can complete simple, routine tasks.  T. 21-22.

Based on an independent review of the record, the undersigned finds substantial evidence to support the ALJ's determination.  In Dr. Cook's letter, Dr. Cook references records from SAMC and UAB in support of his opinions.  T. 805, 809.  The last time Claimant was treated by SAMC prior to September 2016, was in November 2015.  T. 367.  Claimant's last visit to UAB was in January 2016.  As discussed below, there is ample support in the record that Claimant's condition had improved since Dr. Cook's opinions were made (and, indeed, since the last time Dr. Cook treated Claimant, prior to the hearing).

After his discharge from UAB in October 2015, Claimant continued to experience sporadic episodes of confusion.  He went to SEAMC on October 23, 2015, two days after his discharge complaining of being lethargic.  T. 375.  A CT brain scan showed no acute findings.  T. 393.  He was discharged from SEAMC two days later after his mental status improved and he returned to baseline.  T. 375-76.

He was seen for a follow up at UAB in November and, at that time, Claimant's wife noted that he had improved "compared to before. " T. 753. Additionally, a neurologic exam showed that Claimant's speech was fluent, comprehension was intact, affect was full, and he was able to follow complex verbal commands. T. 755. However, he did have difficulty in recall. *Id.* He was asked to return in two months for another follow up. T. 756.

The day after his visit with UAB, on November 13, 2015, Claimant returned to SEAMC where he was admitted overnight for dizziness and vertigo. T. 367-68. His wife and daughter reported that he had episodes where he would blank out for 5-10 seconds, that he was confused and lethargic, and had no short term memory. T. 368. He was confused and lethargic, had no short term memory, asked the same questions repeatedly every few minutes, and indicated he is not able to drive. *Id.* at 368-69. A CT was ordered because Claimant complained about having fallen (although it appears he had not actually fallen), which was normal. T. 371. Although he was unable to understand his discharge instruction, with the exception of memory deficits, he was determined to be normal neurologically. *Id.* Claimant was discharged the following day, November 14, 2015.

In January 2016, upon his return to UAB for his follow up visit, an MRI was performed, which showed "interval improvement" and "no acute abnormality or abnormal enhancement." T. 758. Additionally, although his neurologic exam

showed that his speech was fluent and comprehension intact, he was also very tearful, was not oriented to month or date, and repeated that he cannot remember.  T. 760.  However, he was able to follow complex verbal commands.  *Id.*  He was admitted for another round of plasma exchange.  T. 762.

He was also seen by Dr. Allen in April and May 2016.  In April, Claimant did not do well during his examination and could not answer basic questions.  T. 792. His mood was sad and anxious.  *Id.*  However, in May, Dr. Allen noted that Claimant had better eye contact and was much more articulate.  T. 783.  Additionally, Claimant's wife advised that his last lumbar puncture "showed no infection and only slightly elevated protein", so no further appointments at UAB had been scheduled. T. 783.  Additionally, she reported that his memory was "definitely improving."  *Id.* Similarly, during Claimant's July 2016 visit a nurse practitioner in Dr. Allen's office, Claimant's wife reported that he had not done any "back-tracking" and that he was "doing better."  T. 841.  He had not had any seizures or delusions, was sleeping better and was doing crossword puzzles as well as some yard work.  *Id.* Additionally, he was remembering small things.  *Id.*

Claimant continued to show improvements at his July 2016 visit with Dr. Allen.  T. 845.  Dr. Allen noted that Claimant had "great eye contact" and was "much more conversant."  T. 845.  Claimant reported being more active and walking daily. *Id.*  He said his episodes of dizziness were much less severe and that his tremors

were improving.  *Id.*  He also reported no alcohol consumption for months and no plans to resume drinking.  *Id.*  Claimant reported participating in occupational therapy and said that the sessions have been of "great benefit" to him.  *Id.*  Although Claimant was observed with tremors during a September 2016 visit and also reported having had some dizziness episodes, Dr. Allen noted that Claimant's speech "seems to be improved."  T. 849.  Additionally, it appeared that the tremors may have returned because his therapy sessions had been discontinued for lack of insurance. *Id.*

Claimant saw David Trzcinski, a CRNP in Dr. Allen's office, in January 2017, and was noted as "not twitching as much."  T. 858.  Additionally, Claimant reported to being "a little better."  *Id.*  Claimant also reported that, according to his neurologist, his latest MRI showed that the "lesions in his brain are healing."  *Id.*  He also felt like his memory was improving and he reported driving some.  *Id.*  A physical examination of the Claimant revealed that he was oriented to time, place and person, his mood was neutral, and  his affect appropriate.  T. 860.

Claimant received treatment from Neuro Neurology in June and October 2017.  An examination of Claimant in both instances revealed he was oriented to person, place, problem and time, his mood and affect were appropriate, and his recent and remote memory were intact.  T. 833, 835.

There are no other medical records after October 2017, and prior to the February 2018, hearing.

Based on the above records, the undersigned finds that good cause existed for the ALJ's to assign partial weight to Dr. Cook's opinion. Namely, there is substantial evidence to support the ALJ's determination that Claimant's condition had improved from the time that Dr. Cook formed his opinions.

### D. Whether Substantial Evidence Supports The ALJ's Treatment Of The Non-Examining State Agency Physicians' Opinions.

Claimant was interviewed and his records were reviewed by state agency physician, Dr. Kattner, and by state agency psychologists, Drs. Walls and Wiener, as part of Claimant's application for disability benefits. The ALJ assigned great weight to the opinions of these physicians, and the Claimant disagrees with the ALJ's determinations.

On March 16, 2016, Dr. Walls interviewed Claimant's wife who told him Claimant suffers from anxiety and shot term memory loss. T. 134. She reported that he is able to take care of his personal grooming and prepare simple meals. *Id.* However, he cannot drive, has to be reminded to take his medication and cannot cook because he forgets to turn off the stove. *Id.* Dr. Walls concluded based on a review of the medical records and interviews with the Claimant and his spouse that (1) the mental health concerns do not meet a listing criteria; (2) while the mental confusion and memory loss can be caused by the syndrome he suffers from, these

conditions can be improved with treatment; and (3) Claimant's depression and anxiety are not disabling.  T. 137.

Dr. Walls also conducted a mental RFC assessment on Claimant and concluded that Claimant (1) had the capacity to understand and retain simple (and some complex) instructions; (2) has some distractibility and need a slowed work pace due to mental status; however, he is able to maintain attention and concentration for two-hour periods over an eight-hour day in order to carry out simple tasks at a productive pace; (3) will do best in a slow social demand setting; and (4) can adopt to a work situation and most changes and task demands on a sustained basis.  T. 140-42.  On May 25, 2016, Dr. Wiener reviewed Claimant's record on reconsideration and reached the same findings as Dr. Walls.

On June 9, 2016, Dr. Kattner completed a physical RFC for Claimant.  Dr. Kattner opined that Claimant had no exertional, manipulative, visual, or communicative limitations; that he had postural limitations; that he should avoid even moderate exposure to hazards such as machinery and heights; and that he could occasionally climb ramps, stairs, and ladders, ropes, or scaffolds; and that he could occasionally balance.

An "ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"

*Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam) (citing 20 C.F.R. § 404.1527(f)(2)(i)).   "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources."   *Id.* (citing *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991)).   When considering the findings of a state agency medical or psychological consultant, the ALJ will look to factors "such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions."   20 C.F.R. § 404.1527(e)(2)(ii).

The ALJ assigned great weight Dr. Kattner's opinions because they were consistent with the record.   T. 21.   She assigned great weight to the opinions of Drs. Walls and Wiener because she agreed the Claimant has moderate limitations.   T. 22. Claimant contends the ALJ did so in error and further that little weight should have been assigned to their opinions.

As to Dr. Kattner, the Claimant argues Kattner did not consider the opinions of Drs. Cook or Kesserwani and further that Dr. Kattner did not examine Claimant. Neither of these arguments warrants a remand.   First, as discussed above, the ALJ assigned only partial weight to the opinions of Drs. Cook and Kesserwani because their opinions were not consistent with the Claimant's improved condition after their

last examination of him prior to the hearing.  Thus, the fact that Dr. Kattner failed to consider those opinions is not material.

Second, the fact that none of these state agency consultants examined Claimant does not render their opinions of little use.  To the contrary, the regulations recognize that while "[a]dministrative law judges are not required to adopt any prior administrative medical findings, . . . they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1).

As to the opinions of Drs. Walls and Wiener, Claimant argues that the ALJ did not provide a basis for her decision.  The undersigned disagrees.  As stated above, the ALJ stated she was assigning great weight to their opinions because the Claimant is moderately limited based on his mental status.  In other words, the ALJ's assignment of great weight to these opinions was based on the fact that they are consistent with the record, a determination that is supported by substantial evidence in the record.  Indeed, review of Claimant's daily activities shows that he is able to perform simple tasks.

As the ALJ noted, and as discussed above, during the hearing Claimant admitted to being able to train a new puppy.  Both Claimant and his wife told the ALJ that he drives sometimes, although their testimonies differed in that Claimant

limited his driving to dirt roads, (T. 79) while Claimant's wife stated that Claimant drives to Walmart as well (which is in town).   T. 115.   This testimony is also consistent with the records, which show that Claimant's spouse told medical providers in January 2017 that Claimant was driving again some.   Claimant also told the ALJ he goes to the Dollar General alone.   T. 79.

Additionally, Claimant confirmed at the hearing that he is capable of taking care of his personal needs.  T. 80.   Similarly, Claimant's wife told the state agency psychologists that Claimant could take care of his own grooming needs and could prepare simple meals, such as making sandwiches, anything that does not require turning on or off the stove, as he would forget to turn it off.   T. 134.   Claimant also told the ALJ that he could do the same thing over and over again and would be able to retain information that was pretty straightforward.   T. 92.   Claimant also does crossword puzzles at home.   T. 97.

Moreover, the state agency opinions were consistent with Dr. Long's opinion and examination.   As stated above, Dr. Long opined that Claimant should resume work and be evaluated by a physician for a determination of whether any physical problems interfere with his ability to work.   T. 777.

## VI.   CLAIMANT DID NOT MEET LISTING 12.02

The regulations promulgated by the Commissioner at Appendix 1, Subpart P, set out specific physical and mental conditions that are presumptively disabling.   If

a claimant meets the requirements of one of the listings, no further proof of disability is required. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). In this case, the ALJ considered whether the Claimant's impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and determined they did not. T. 16. Specifically, the ALJ determined that the impairments did not meet or medically equal the criteria of listings 12.04 and 12.06.

The Claimant takes issue with this determination and argues the ALJ failed to consider whether Claimant's impairments meet or medically equal the listings in 12.02, which sets forth the requirements of finding disability due to neurocognitive disorders. However, Claimant acknowledges that the ALJ determined that he did not meet the (B) criteria of listings 12.04 and 12.06, which are the same as for listing 12.02, but argues that such determination is not supported by substantial evidence.

When a claimant "contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability . . . , he must present specific medical findings that meet the various tests listed under the description of the applicable impairment." *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986). Moreover, even where the ALJ did not explicitly discuss whether a claimant meets a specific listing, the Court can affirm the ALJ's findings if "substantial record evidence supports that [claimant]'s condition did not actually or functionally meet"

the listing in question. *Turberville ex rel. Rowell v. Astrue*, 316 F. App'x 891, 893 (11th Cir. 2009).

Listing 12.02 (Neurocognitive Disorders) is satisfied by meeting or medically equaling the criteria of both A and B, or A and C:

> A. Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas: (1) Complex attention; (2) Executive function; (3) Learning and memory; (4) Language; (5) Perceptual-motor; or (6) Social cognition.
> AND

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F): (1) Understand, remember, or apply information (see 12.00E1); (2) Interact with others (see 12.00E2); (3) Concentrate, persist, or maintain pace (see 12.00E3); (4) Adapt or manage oneself (see 12.00E4).
> OR

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

The undersigned finds that the ALJ's determination is supported by substantial evidence, namely the opinions of the state examiners, Dr. Long, and Claimant's own testimony. As to paragraph B, neither state psychologist found that

Claimant was either extremely limited or marketed limited in any of the four areas of mental functioning.  To the contrary, state psychologist, Dr. Walls, determined that Plaintiff was only mildly limited in the activities of daily living and maintaining social functioning.  T. 136.  He determined that Plaintiff was moderately limited in the area of concentration, persistence and pace.  *Id.*  Dr. Walls reached the same conclusion on reconsideration.  T. 153.

Similarly, Dr. Long determined that while Claimant appeared to be confused and disorganized in his thinking, his speech was logical and reality based.  T. 776.  Additionally, Claimant responded to 10 out of 10 orientation questions corrector and 3 out of 3 immediate recall items correctly.  *Id.*  Dr. Long found Claimant's insight to be acceptable, Claimant capable of making appropriate decisions and giving relevant information, and attention to be intact.  *Id.*

Finally, according to Claimant and his wife, Claimant could drive sometimes and also go to the store by himself.  He is independent with his personal grooming.  He was able to train a puppy and to do crossword puzzles.  Additionally, he is able to do simple chores such as loading the dishwasher, taking out the trash, sweeping, and making simple meals.  Claimant's ability to engage in these activities further supports the ALJ's determination that Claimant was only moderately limited in the four areas of cognitive functioning.

Moreover, as to paragraphs A and C, while Claimant points to various notes in the medical records where Claimant may have exhibited some impaired cognitive function, those instances appear to be sporadic rather than pervasive or constant and further improved over time.  Indeed, in Dr. Allen's treatment notes for July 25, 2016, Dr. Allen noted that Claimant "has great eye contact and is much more conversant than in prior office visits."   T. 845. Additionally, Claimant was more active and walking daily.   *Id.*   Claimant also confirmed that he had ceased all alcohol consumption in the past few months, and that his tremors have been improving.   *Id.* Likewise, in January 2017, medical provider David Trzcinski noted that Claimant's lesions are healing, his memory is better, and he is driving some.  The undersigned also notes that since 2015, Claimant has not had any seizures or hospitalizations.

Based on the above, the undersigned finds that the ALJ's determination that Claimant is not disabled is supported by substantial evidence even if the ALJ did not specifically mention listing 12.02.

## VII.   THE ALJ'S RFC DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Generally, it is at step four, when the ALJ determines a claimant's RFC, where the rubber meets the road, and this case is no different.  Claimant argues the ALJ's RFC determination is not supported by substantial evidence.   In support of this position, Claimant raises the same arguments addressed above, namely, that the medical records show that there were periods of time when Claimant exhibited a

lack of mental functioning.  He argues the ALJ failed to consider such issues in the hypothetical provided to the vocational expert.

For all of the reasons discussed above, the undersigned disagrees.  As discussed in sections V and VI, a complete review of the medical records shows that Claimant's condition improved after November 2015.  Although at times Claimant may have experienced setbacks or isolated episodes of memory loss or confusion, the records simply do not support the Claimant's conclusion that such episodes should a recurrent problem.  Moreover, in the ALJ's RFC, the ALJ limited Claimant to "simple routine tasks for his cognition trouble."  T. 22.  The ALJ further limited Claimant "to few workplace changes," to accommodate for "his trouble regulating his emotions."  T. 22, 107.  Thus, it appears that the ALJ did consider Claimant's instances of cognitive trouble in her hypothetical.

## VIII.  CLAIMANT'S SUBJECTIVE COMPLAINTS

A claimant, like Pelham, who attempts to prove disability based on subjective complaints must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing her medical condition could reasonably be expected to give rise to the alleged symptoms.  *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 96-7p; *Wilson v Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).  If the objective medical evidence does not confirm the severity of the claimant's alleged

symptoms but the claimant establishes he has an impairment that could reasonably be expected to produce the symptoms alleged, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. Notably, in determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Claimant argues the ALJ erred in failing to properly consider his allegations of symptoms of limitations. However, Claimant's position is not supported by the record. In the ALJ's opinion, the ALJ found that Claimant's subjective complaints reflected that he "suffered from a rare condition that has neurological issues that can arise and fade." T. 22. These issues included forgetfulness and tremors. It included long term memory which is sometimes bad and sometimes excellent. *Id.* It also included a diminished ability to control emotions and retain what Claimant reads. *Id.* Despite, these issues, however, the ALJ determined that Claimant could still perform simple tasks. As discussed in section VI, above, the ALJ's determination in that regard is supported by substantial evidence. Indeed, Claimant agreed at the

hearing that he could perform the same thing over and over again, if it did not require heavy lifting.  T. 92.

## IX.  CONCLUSION

Accordingly, it is ORDERED that:

1.    The decision of the Commissioner is AFFIRMED and Plaintiff's application for Disability Insurance Benefits is DENIED.

2.    The clerk is directed to enter judgment in favor of the Commissioner and close the file.

At Pensacola, Florida, this 6th day of August, 2020.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**